**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MELVIN V., | |
| **Plaintiff,** | **Civil Action No. 22-1938 (ES)** |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| **Defendant.** | |

**SALAS, DISTRICT JUDGE**

Plaintiff Melvin L. Vazquez ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 1381, *et seq*.[1]  (*See* D.E. No. 7 ("Mov. Br.") at 4).  The Court decides this matter without oral argument.  *See* Fed. R. Civ. P. 78(b).  For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

## I.     BACKGROUND

On September 13, 2016, Plaintiff filed an application for DIB based on alleged disability as of February 1, 2013.[2]  (D.E. No. 4 ("Administrative Record" or "R.") at 166–67).  Plaintiff

---

[1]      Although Plaintiff's Complaint seeks to vacate the Commissioner's decision denying both "[DIB] **and** Supplemental Social Security Income" ("SSI") (D.E. No. 1 ("Complaint" or "Compl." at 2, ¶ 3 (emphasis added), Plaintiff's September 13, 2016 application for benefits presently on appeal did not include a request for SSI.  (R. at 79).  Indeed, Plaintiff previously filed an application for SSI disability benefits on December 30, 2014.  (R. at 59 & 86).  The Social Security Administration ("SSA") found that Plaintiff was disabled for purposes of SSI.  (R. at 67). That prior determination, however, is not at issue in this appeal and is noted here only for background.

[2]      The record contains two documents reflecting Plaintiff's application for DIB—one dated September 13, 2016, and another dated October 4, 2016.  (*See* R. at 79 & 166–67).  The Plaintiff cites the latter date while the Commissioner cites the former date.  (*Compare* Mov. Br. at 2 (stating that "[P]laintiff filed an application for [DIB] on October 4, 2016"), *with* D.E. No. 10 ("Opp. Br.") at 2 (noting that "Plaintiff applied for DIB on September 13, 2026)).  The Court adopts the earlier date as reflected in the record and notes that this issue does not affect the Court's

alleged disability based on several "severe medical impairments," including "orthopedic, neurological, and psychiatric conditions as well as obesity." (Compl. at ¶¶ 5–6). The Social Security Administration ("SSA") denied Plaintiff's initial application for disability benefits and his request for reconsideration. (R. at 99–101 & 107–11). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") to review the application for disability benefits *de novo*. (*Id.* at 112–13). On October 24, 2018, ALJ Richard West held a hearing. (*Id.* at 31–52). On November 23, 2018, ALJ West denied disability at step five of the sequential evaluation analysis. (*Id.* at 20–29). Plaintiff sought Appeals Council review. (*Id*. at 162–65). On January 15, 2020, the Appeals Council found no basis "for changing the Administrative Law Judge's decision." (*Id*. at 1).

On March 10, 2020, Plaintiff filed an appeal before this Court, specifically the Honorable Judge Kevin McNulty, U.S.D.J. (ret.). *See Melvin V. v. Commissioner of Social Security*, Civil Action No. 20-2595, D.E. No. 1. On December 22, 2020, Plaintiff filed a statement of contentions pursuant to Local Civil Rule 9.1 seeking "a possible voluntary remand." *Id.*, D.E. No. 10. In response, on January 15, 2021, the Commissioner filed a motion to remand. *Id.*, D.E. No. 11. The motion specified the following:

> "[U]pon remand, the Appeals Council will instruct an Administrative Law Judge (ALJ) to further consider Plaintiff's alleged impairments (including obesity) at step 2 and 3 of the sequential evaluation, to further assess the residual functional capacity [("RFC")], to determine Plaintiff's ability to return to past relevant work and/or make an adjustment to other work, and to issue a new decision."

---

analysis. Indeed, it appears that the "application summary" dated October 4, 2016, was generated after Plaintiff spoke with a representative from the SSA to "complete[] [his] application." (*See* R. at 166).

*Id.* at 1 (ECF Pagination). Plaintiff agreed that the matter should be remanded. *Id.*, D.E. No. 12. However, he contested the scope of proceedings on remand. *See id.* Plaintiff argued that the Court should order the Appeals Council to mandate a new evidentiary hearing before the ALJ. *See generally id.* On June 30, 2021, Judge McNulty granted the Commissioner's motion to remand with no separate direction that the Appeals Council order a new hearing. *Id.*, D.E. No. 15.

On August 23, 2021, the Appeals Council issued its remand order. (R. at 473–74). Upon remand, among other things, it instructed the ALJ to "[f]urther consider the [Plaintiff]'s obesity pursuant to [Social Security Ruling ("SSR")] 19-2p[,]" and, if necessary, to "obtain evidence from a medical expert related to the nature and severity of, and functional limitations resulting from, the [Plaintiff]'s impairments." (R. at 474). In addition, the Appeals Council instructed the ALJ to "[g]ive further consideration to the [Plaintiff]'s maximum RFC and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations," and to "[o]btain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Plaintiff]'s occupational base." (*Id.*). The Appeals Council further noted that the ALJ's decision (i) "did not contain an adequate evaluation of [Plaintiff]'s obesity"; (ii) did not provide rationale to support" his finding that obesity was a "severe impairment"; (iii) did not "contain a discussion of obesity at step 3[;]" and (iv) did not provide sufficient rationale to explain how the RFC "accounted for [Plaintiff's] obesity." (*Id.* at 473). Overall, the Appeals Council directed the ALJ to "take any further action needed to complete the [A]dministrative [R]ecord and issue a new decision." (*Id.* at 474).[3]

---

[3]    The issue of whether a new hearing should be conducted—as advocated by Plaintiff when opposing the Commissioner's motion to remand—became moot in light of the Appeals Council's directives, which essentially required the ALJ to hear testimony from a vocational expert. (*See* Mov. Br. at 5 n.2).

On November 3, 2021, ALJ West held a post-remand hearing, at which he called a vocational expert to testify regarding available jobs within Plaintiff's vocational profile. (R. at 419 & 430–31). On December 9, 2021, ALJ West issued his second decision concluding that Plaintiff "was not under a disability, as defined in the [Act], at any time from February 1, 2013, the alleged onset date, through December 31, 2013, the date last insured." (*Id.* at 413).

Plaintiff filed the instant appeal, over which the Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). (*See generally* Compl.). The appeal is fully briefed. (*See generally* Mov. Br.; Opp. Br.).

## II.    LEGAL STANDARD

### A.    Standard Governing Benefits

To qualify for disability benefits, a claimant must show that he or she is disabled within the meaning of the Act. 42 U.S.C. § 1382(a); 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *Fargnoli v. Massanari*, 247 F.3d 34, 38–39 (3d Cir. 2001). The individual's physical or mental impairment, furthermore, must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 1382c(a)(3)(B); 42 U.S.C. § 423(d)(2)(A). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B); 42 U.S.C. § 423(d)(2)(A).

4

To determine whether a given claimant qualifies as disabled, "[t]he Commissioner uses a five-step process." *Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 160 (3d Cir. 2016) (citing 20 C.F.R. §§ 404.1520 & 416.920). "The claimant bears the burden of proof for steps one, two, and four[,]" and "[t]he Commissioner bears the burden of proof for the last step." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).[4] If the determination at a particular step is dispositive of whether the claimant is or is not disabled, the inquiry ends. *See* 20 C.F.R. § 404.1520(a)(4).

***Step One***. At step one, the claimant must show that he or she has not engaged in any substantial gainful activity since the onset date of his or her severe impairment. 20 C.F.R. § 404.1520(a)(4)(i). If an individual engages in substantial gainful activity, he or she is not disabled under the Act, regardless of the severity of her impairment or other factors such as age, education, and work experience. 20 C.F.R. § 404.1520(b). If the claimant demonstrates he or she has not engaged in substantial gainful activity, the analysis proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4).

***Step Two***. At step two, the claimant must show that his or her medically determinable impairments or a combination of impairments were "severe" as of the date of last insured ("DLI"). 20 C.F.R. § 404.1520(a)(4)(ii); *Jones v. Comm'r of Soc. Sec.*, No. 17-04691, 2023 WL 7180651, at *6 (D.N.J. Nov. 1, 2023) ("To be eligible for disability benefits, a claimant must establish that she was disabled prior to the date she was last insured." (first citing *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990); then citing *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x. 684, 688 (3d

---

[4] "Because step three involves a conclusive presumption based on the listings, no one bears that burden of proof." *Id.* at 263 n.2 (citing *Yuckert*, 482 U.S. at 146 n.5).

Cir. 2020))).[5]    An "impairment or combination of impairments" is not "severe" unless it "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *See, e.g.*, *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting 20 C.F.R. §§ 404.1520(c) & 416.920(c)).

***Step Three***.    At step three, the claimant may show, based on medical evidence, that his or her impairments met or equaled an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § Part 404, Subpart P, Appendix 1 ("Listings") as of the DLI.    *See* 20 C.F.R. § 404.1520(a)(4)(iii).    If the claimant makes such a showing, he or she is presumptively disabled and entitled to benefits.    *Id.*    If he or she does not make that showing, he or she proceeds to step four.    *See* 20 C.F.R. § 404.1520(a)(4).

***Step Four***.    At step four, the claimant must show that he or she lacked the RFC to perform his or her past relevant work as of the DLI.    20 C.F.R. § 404.1520(a)(4)(iv); *see, e.g.*, *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).    If the claimant lacks the RFC to perform his or her past relevant work, the analysis proceeds.    *Id.*

***Step Five***.    In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his or her age, education, work experience, and RFC.    20 C.F.R. § 404.1520(a)(4)(v); *see, e.g.*, *Plummer*, 186 F.3d at 428.    If the Commissioner shows that the claimant can perform jobs that exist in significant numbers in the national economy, the claimant is not entitled to benefits.    *See* 20 C.F.R. § 404.1520(a)(4)(v).

---

[5]    A Title II claimant seeking disability insurance benefits must prove disability prior to the DLI.  *See* 20 C.F.R. § 404.131.  Plaintiff makes no argument that the ALJ misstated any of the time periods under consideration for DIB. (*See generally* Mov. Br.; R.).

### B.    Standard of Review

The Court exercises plenary review of the ALJ's application of the law and reviews factual findings for "substantial evidence." *See* 42 U.S.C. § 405(g); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence is "more than a mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea*, 370 F.3d at 360. The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek. See Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla[.]'" (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))).

The Court is bound by the ALJ's findings of fact that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006). Thus, the Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Finally, while failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003). In other words, on appeal, a claimant bears the burden of showing not merely that the Commissioner erred, but also that the error was harmful.

*Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

### III. ALJ'S DECISION[6]

The ALJ first conducted the five-step sequential analysis to determine whether Plaintiff was disabled from the alleged onset date of February 1, 2013, through the date of last insured on December 31, 2013. (*See* R. at 406).

At Step One, the ALJ found that Plaintiff did not engage in substantial gainful activities during the period from his alleged onset date of February 1, 2013, through the date of last insured on December 31, 2013. (R. at 408).

At Step Two, the ALJ determined that Plaintiff had two severe impairments: "degenerative disc disease and degenerative joint disease." (*Id.*). The ALJ further determined that Plaintiff has a "non-medically determined obesity impairment," that no longer qualified as a severe impairment and thus declined to conduct "any further analysis." (*Id.*).[7]

At Step Three, the ALJ considered Listings 1.15 and 1.18 and determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in [the applicable regulations]." (*Id.*).

At Step Four, the ALJ held that Plaintiff "was unable to perform any past relevant work" and Plaintiff "had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except he

---

[6]    The findings described herein are from the ALJ West's December 9, 2021 decision on remand, (R. at 402–18), unless otherwise delineated.

[7]    The ALJ noted that he previously found Plaintiff to be obese based on Plaintiff's self-reported information at the time of his application, reflecting a BMI of 32.7. (R. at 408). However, the medical evidence indicates that Plaintiff "at no point prior to the DLI had a BMI of 30 or higher." (*Id.*). And "[a]s of August 29, 2013, the date of the last examination in the record prior to his DLI, his weight was 200 pounds, which g[a]ve[] him a BMI of 28.7." (*Id.*). Thus, the ALJ found that obesity no longer qualified as a severe impairment and noted that it would not be appropriate "to conduct any further analysis." (*Id.*).

can stand and/or walk a maximum of four hours in a normal eight-hour workday; and he can perform all postural functions occasionally." (*Id.* at 409 & 411).

In making this determination, the ALJ considered Plaintiff's symptoms "and the extent to which [his] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" as well as opinion evidence, Plaintiff's disability report and testimony at both his initial and remand hearings. (*Id.*).  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.*). However, "[Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*).  The ALJ further considered Plaintiff's history of treatments, including X-ray results, emergency room records, and other examination records. (*Id*. at 410).  As for opinion evidence, the ALJ gave partial weight to the "December 2016 and February 2017 opinions of the DDS consultants" who did not personally examine Plaintiff. (*Id.* at 410–411).  They opined that "additional evidence would be needed to fully assess the severity of [Plaintiff's] condition prior to the date last insured" and that "the available evidence was insufficient to fully evaluate the medical severity prior to that date." (*Id.* at 410).  Similarly, the ALJ also gave partial weight to the "consultative examination report of Dr. Vekhnis." (*Id.* at 411).  Dr. Vekhnis examined Plaintiff—who has "a history of neck and low back pain, and early knee degenerative changes"—and found that "he ambulates without the use [of] an assistive device." (*Id.*).  According to the ALJ, the report did not "provide a full function-by-function analysis of [Plaintiff's] abilities and limitations with respect to the various demands of work-related activities." (*Id.*).

Finally, at Step Five, the ALJ determined that "[t]hrough the date last insured, considering [Plaintiff]'s age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." (*Id.* at 412). The ALJ relied on a vocational expert who testified that, given all these factors, Plaintiff "would have been able to perform the requirements of representative occupations," including:

(i)    **Sealing Machine Operator** (DOT Number 690.685-154, classified as light work, with a skill level of SVP 2, and with approximately 20,000 positions in the national economy); and

(ii)   **Microfilm Mounter** (DOT Number 208.685-022, classified as light work, with a skill level of SVP 2, and with approximately 35,000 positions in the national economy); and

(iii)  **Small Parts Assembler** (DOT Number 708.684-022, classified as light work, with a skill level of SVP 2, and with approximately 30,000 positions in the national economy).

(*Id.*). Accordingly, the ALJ found that Plaintiff had not been disabled as defined by the Act at any time from February 1, 2013, the alleged onset date, through December 31, 2013, the date of the DLI. (*Id*. at 413).

## IV.    DISCUSSION

On appeal, Plaintiff raises two arguments in opposition to the ALJ's disability determination. The Court addresses them in turn.

### A.    The ALJ Complied with the Remand Orders

First, Plaintiff argues that the ALJ's decision "circumvents the clear intention and Order of the prior District Court Remand[.]" (Mov. Br. at 7). Plaintiff further argues that by failing to

comply with the instructions set forth in the remand orders,[8] the ALJ committed legal error. (*Id.* at 8). The Plaintiff contends that although the ALJ's second decision formally recited the directives from the Appeals Council remand order, the ALJ effectively circumvented them in substance. (*Id.* at 15). Plaintiff argues that the Appeals Council remand order required the ALJ to re-evaluate Plaintiff's obesity, reconsider the RFC with a reasoned explanation, and obtain additional vocational (and potentially medical) evidence. (*Id.* at 11). According to Plaintiff, instead of conducting the required analysis, the ALJ reversed his prior findings—based on the same evidence—and concluded that obesity was not a medically determinable impairment, thereby avoiding any meaningful discussion on remand. (*Id.* at 13–14). Plaintiff further asserts that the ALJ issued the exact same RFC as in the first decision, without engaging in the mandated reconsideration or providing additional rationale. (*Id.* at 14). Additionally, Plaintiff argues that although vocational expert testimony was obtained, "the second decision is based on that testimony only in accord with the ALJ's unchanged and un-reconsidered RFC." (*Id.*). Accordingly, Plaintiff maintains that such conduct amounts to a deliberate evasion of the remand orders, which constitutes legal error and warrants remand, as an agency is bound to adhere to the terms of a court-ordered remand. (*See generally id.*).

In opposition, the Commissioner contends that the ALJ complied with this Court's remand order and the Appeals Council's remand order.[9] (Opp. Br. at 7). Specifically, the Commissioner argues that the ALJ addressed obesity on remand by reviewing the medical evidence and

---

[8]    Plaintiff refers to both the remand order entered by Judge McNulty and the remand order issued by the Appeals Council. According to Plaintiff, "Judge McNulty's Order reflected both the agreed upon provisions of the remand and the Commissioner's option to grant or withhold a new hearing[.]" (*See* Mov. Br. at 10). And "Judge McNulty's Order which granted the Commissioner's motion to remand **as presented**, rendered the terms of the remand, offered by the Commissioner originally and in its motion, as orders of the Court." *Id.* at 12.

[9]    The Commissioner does not dispute that Judge McNulty's remand order reflected the terms of the remand originally proposed in the Commissioner's motion to remand, and thus adopted those terms as the order of the Court. (*See* Opp. Br. at 7).

determining that Plaintiff did not meet the clinical definition of obesity during the relevant period because his body mass index did not reach 30 at any time before his date last insured. (*Id.* at 8 (citing SSR 19-2p, 2019 WL 2374244, at *2)). As a result, the Commissioner argues that the ALJ reasonably concluded that obesity was not a medically determinable impairment and that no further analysis was required. (*Id.*).

The Court is not persuaded by Plaintiff's argument that the ALJ failed to comply with the remand orders issued by the District Court and Appeals Council. As an initial matter, where a prior administrative decision has been vacated, the ALJ is required to conduct a *de novo* review of the record and is not bound by prior findings or obligated to reach a different result on remand. *See Demaio v. Berryhill*, No. 15-5187, 2017 WL 4618749, at *4 (D.N.J. Oct. 13, 2017) ("In general, an ALJ decision vacated by the Appeals Council has no res judicata effect on a subsequent ALJ decision."). A *de novo* determination is "an independent determination of a controversy that accords no deference to any prior resolution of the same controversy." *United States v. Raddatz*, 447 U.S. 667, 690 (1980). Plaintiff's argument that the ALJ "circumvented" the remand orders amounts to a mere disagreement with the ALJ's conclusions on remand.

Moreover, the Appeals Council directed the ALJ to reconsider Plaintiff's obesity, reassess the RFC, and obtain vocational evidence. (R. at 474). The record reflects that the ALJ did so. (*Id.* at 408–12 & 430–35). The ALJ reconsidered Plaintiff's obesity and, based on the medical evidence during the relevant period, determined that it did not constitute a medically determinable impairment because Plaintiff's body mass index did not meet the applicable threshold. (*Id.* at 408). Specifically, the ALJ wrote:

> [Plaintiff] has a non-medically determinable obesity impairment. The prior ALJ Decision found claimant obese based upon the self-reporting at the time of his application, where his BMI was 32.7 (Ex. 9A). However, a review of the medical evidence shows that

> [Plaintiff] at no point prior to the DLI had a BMI of 30 or higher (Ex. 1F, 2F). As of August 29, 2013, the date of the last exam in the record prior to his DLI, his weight was 200 pounds, which gives him a BMI of 28.7 (Ex. 2F at 14). Accordingly, obesity is no longer a severe impairment, and it is not appropriate to conduct any further analysis.

(*Id.*).  The ALJ's determination that obesity was not a medically determinable impairment does not constitute a deviation from the remand orders; rather, it reflects the ALJ's permissible reevaluation of the evidentiary record on a *de novo* basis.

Plaintiff relies on *Sullivan v. Hudson* for the proposition that "[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."  490 U.S. 877, 885 (1989).  However, Plaintiff's reliance on *Hudson* is misplaced.  *Hudson* addressed whether a federal court may award attorney's fees under the Equal Access to Justice Act for representation provided during administrative proceedings on remand, not whether an ALJ complied with a remand order.  *Id.* at 883–85.  The statement cited by Plaintiff appears only in the court's general discussion of the district court's continuing jurisdiction and is not the holding of the case.  *Id*. at 885.  In any event, as discussed above, the ALJ here did not disregard the remand directives but instead reconsidered Plaintiff's obesity and reevaluated the record accordingly.  (R. at 408).

Plaintiff's reliance on *Orta v. Commissioner of Social Security* is likewise unavailing.  No. 18-3230, 2020 WL 525939 (D.N.J. Jan. 31, 2020).  In *Orta*, the court remanded with a specific directive that the ALJ resolve a clear discrepancy between conflicting medical opinions regarding plaintiff's ability to stand and walk, and the ALJ failed to do so.   Here, by contrast, there is no comparable unresolved conflict.  (*See generally* R.).  To the extent Plaintiff challenges those findings, such arguments improperly invite the Court to reweigh the evidence.  However, it is well established that a reviewing court may not "re-weigh the evidence or substitute its judgment for

13

that of the ALJ," and must uphold the decision so long as it is supported by substantial evidence. *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201, (3d Cir. 2012); *see also Chandler*, 667 F.3d at 359. ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].").

Additionally, the ALJ reassessed Plaintiff's RFC in light of the entire record, including Plaintiff's testimony, the objective medical evidence, and the opinions of the state agency medical consultants. (R. at 408–12). The ALJ also obtained vocational expert testimony and relied on that testimony at step five to determine whether jobs existed in significant numbers that Plaintiff could perform. (*Id.* at 412). These actions demonstrate that the ALJ engaged with the substance of the remand instructions, rather than disregard them.

Finally, to the extent Plaintiff argues that the ALJ ignored the Appeals Council's suggestion for a medical expert witness without comment or formal discussion, (Mov. Br. at 14), the Court notes that the Appeals Council's directive on that point was discretionary, not mandatory, and the decision whether to call a medical expert rests within the ALJ's sound judgment. *See Kushner v. Comm'r of Soc. Sec.*, 765 F. App'x 825, 829–30 (3d Cir. 2019) ("ALJ must call upon the services of a medical advisor in a situation where the alleged impairment was a slowly progressing one, the alleged onset date was far in the past, and *adequate medical records for the most relevant period were not available*." (quoting *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 549 n. 7 (3d Cir. 2003))); *see also Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) ("Primarily, the ALJ is responsible for making a [RFC] determination based on the medical evidence, and he is not required to seek a separate expert medical opinion."). Plaintiff fails to cite authority to support the notion that the ALJ must provide rationale for its discretionary decision to forego a medical expert.

14

Accordingly, the Court finds that the ALJ complied with the remand orders.

**B.      The ALJ's Decision Is Supported by Substantial Evidence**

The ALJ found that, through the date last insured, Plaintiff possessed the RFC to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except he can stand and/or walk a maximum of four hours in a normal eight-hour workday; and he can perform all postural functions occasionally.

(R. at 409).   Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence and fails to provide the explanation required for meaningful judicial review.  (Mov. Br. at 16).  Plaintiff contends that while the ALJ summarized portions of the medical record, he did not build a logical bridge between that evidence and the specific functional limitations adopted in the RFC.  (*Id.* at 23).  Specifically, Plaintiff argues that the decision effectively "announce[s]" that Plaintiff can perform "light work" with certain limitations—such as standing or walking for four hours—without explaining why those particular limitations are supported by the evidence.  (*Id.*). According to Plaintiff, the ALJ failed to conduct the required function-by-function analysis under SSR 96-8p, which mandates that an adjudicator assess specific work-related abilities before translating them into an overall exertional level.  (*Id.* at 24–27).

In opposition, the Commissioner argues that "substantial evidence supports the ALJ's RFC for a reduced range of light work." (Opp. Br. at 8).  And "[t]he ALJ based his finding on Plaintiff's testimony and written reports; the limited objective medical evidence from the brief relevant period; and the state agency medical consultant's findings."  (*Id.* at 9).   Additionally, the Commissioner contends that an explicit function-by-function analysis is not necessary, as "a narrative discussion of the relevant evidence has been found to be sufficient." (*Id.* at 10).  The Commissioner also asserts that, rather than merely announcing his conclusion, the ALJ explained at the hearing that the source of his hypothetical question—which "assumed an RFC for light work

with standing and/or walking no more than four hours per day and occasional postural movement"—was the "state agency's prior administrative medical findings." (*Id.*). Moreover, and importantly, the Commissioner points out how the ALJ generously limited Plaintiff "to only occasional postural movements." (*Id.*). By contrast, the state agency medical consultant determined that Plaintiff "could frequently climb ramps and stairs, balance, and stoop." (*Id.* (citing R. 431 & 75).

The Court agrees with the Commissioner and finds that the ALJ's RFC determination is supported by substantial evidence. In his decision, the ALJ noted that:

> X-rays of [Plaintiff's] right knee revealed no evidence of acute fracture or dislocation; minimal enthesopathy changes at the superior pole of the patella; preserved joint spaces; and no evidence of joint effusion (Ex. 1F at 2). . . . His treatment records with Dr. Bermudez continuously revealed no edema (Ex. 2F). . . . Upon physical examination, [Plaintiff] walked into the office with a cane. He was able to walk without a cane. He could walk on heels and toes. He could squat. . . . Examination of the lower extremities showed full range in hips, knees and ankles. Examination of the knees showed no swelling, no deformities, mild medial compartment tenderness on the right.

(R. at 410). The Court finds that the ALJ specified the evidence he relied upon to support his conclusion. *See Sullivan v. Comm'r of Soc. Sec.*, No. 12-7668, 2013 WL 5973799, at *8 (D.N.J. Nov. 8, 2013). Here, the ALJ provided a complete narrative discussion of the pertinent evidence of record, citing specific medical evidence as well as other evidence, to support his RFC assessment. (R. at 409–11). Moreover, the ALJ noted that, in making his decision, he gave partial weight to the December 2016 and February 2017 opinions of the DDS consultants. (R. at 410). The consultants stated that additional evidence would be necessary to fully assess the severity of Plaintiff's condition prior to the date last insured, and that the existing record was insufficient to fully evaluate Plaintiff's medical severity during that period. (*See id.*; *see also, e.g.*, R. at 83).

State agency medical consultants are experts in evaluating the issues in disability claims and their opinions "merit significant consideration." *Chandler*, 667 F.3d at 361; 20 C.F.R. § 404.1513a(b)(1).

Although the ALJ did not engage in a function-by-function analysis as to Plaintiff's work-related abilities, this Court and other courts in the United States Court of Appeals for the Third Circuit have found that a detailed function-by-function analysis is not necessary. *See, e.g.*, *Tompkins v. Astrue*, No. 12-1897, 2013 WL 1966059, at *13 (D.N.J. May 10, 2013) ("[T]here is no format to which an ALJ must adhere when giving h[is] reasoning so long as 'there is sufficient development of the record and explanation of findings to permit meaningful review.'" (quoting *Jones v. Barnhart*, 364 F.3d 501 (3d Cir. 2004))). The Court also finds that the ALJ identified the basis of his RFC at the hearing by noting that it was based on the state agency's prior administrative medical findings, and that the medical consultant concluded Plaintiff's impairments limited him to light work with standing and/or walking for four hours in an eight-hour day. (R. at 73 & 75–76).

Plaintiff further argues that the ALJ's assessment is internally inconsistent because the RFC remained unchanged on remand despite the removal of obesity as a severe impairment. (Mov. Br. at 26). This argument is not persuasive. Plaintiff identifies no authority requiring an ALJ to reach a different RFC simply because the set of severe impairments has changed. (*See generally id.*). On the contrary, many federal courts have upheld decisions where, on remand, an ALJ had to make further findings and ultimately arrived at the same RFC determination. *See, e.g.*, *Centeno v. Comm'r of Soc. Sec.*, No. 13-2951, 2015 WL 5666751, at *6 (D.N.J. Sept. 25, 2015) (collecting cases). Thus, even assuming obesity was previously considered, the ALJ could reasonably conclude on remand that the objective medical evidence did not support additional functional

17

limitations beyond those already captured in the RFC.  In that circumstance, the fact that the RFC remained unchanged does not render the ALJ's analysis inconsistent or erroneous.

Plaintiff's argument, then, appears to amount to "a disagreement with the ALJ's decision, which the Court has already explained is supported by substantial evidence." *Kayra G. v. Kijakazi*, No. 20-10897, 2023 WL 2674769, at *12 (D.N.J. Mar. 29, 2023); *see also Perkins*, 79 F. App'x at 514–15 ("[Plaintiff's] argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence.").  The Court thus concludes that the ALJ's findings regarding Plaintiff's RFC for the period beginning on February 1, 2013 through the DLI on December 31, 2013, are consistent with the record evidence and "enjoy substantial support in the record." *Kelli S. J. v. Kijakazi*, No. 21-11656, 2023 WL 8618241, at *8 (D.N.J. Dec. 13, 2023).

## V.    CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the decision of the Commissioner.  An appropriate Order accompanies this Opinion.

Dated: June 22, 2026                                                    *s/ Esther Salas*
                                                                                  **Esther Salas, U.S.D.J.**

18